IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| JAMESINA CRAWFORD, ) | Civil Action No. 2:10-2094-CWH-BM |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| LIMEHOUSE & SONS, INC., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This action has been filed by the Plaintiff alleging, inter alia, race and gender discrimination in violation of Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000(e) et. seq. Plaintiff's complaint also includes state law claims for breach of contract/breach of contract with fraudulent intent, and for negligent supervision.

The Defendant filed a motion to dismiss Plaintiff's two state law causes of action pursuant to Rule 12, Fed.R.Civ.P., arguing that Plaintiff has failed to plead sufficient facts to support her state law claims, and that in any event her claim for negligent supervision is barred by the exclusivity provisions of the South Carolina Workers Compensation Act. Plaintiff filed a memorandum in opposition to the Defendant's motion on September 16, 2010, to which the Defendant filed a reply memorandum on September 27, 2010. Defendant's motion is now before the Court for disposition.[1]

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local
(continued...)



1

## Allegations of Plaintiff's Complaint

Plaintiff alleges that she is an African American female who applied for a welder position with the Defendant on or about February 21, 2008. Plaintiff alleges that, upon completing the application for employment, an employee of the Defendant (referred to in the Complaint as the "Examiner") called her to ask if she could come back and take a welding test the next day. Plaintiff alleges that she passed this test, following which the Examiner began telling Plaintiff about her job duties, where she would be working, and her hours. Plaintiff alleges that the Examiner also instructed her to fill out tax forms and a time slip, and sent her to a medical center for a drug screen. Plaintiff alleges that the Examiner told her she would begin work the following Monday.

Plaintiff alleges that after completing the drug screen, she returned to the Defendant's office and gave the secretary her drug screen verification, following which the secretary asked her to sit down and told her the Examiner would be with her in a moment. Plaintiff alleges that while she was waiting, an unknown male employee came out to the waiting room, said hello to the Plaintiff, and then returned to another office. Plaintiff alleges that the Examiner subsequently came out and told Plaintiff "the parts did not come in" and "we did not get the contract." Plaintiff alleges the Examiner then apologized for not being able to hire her, but told her to try calling back later to see if something opened up, and that she could also come back later to get a refund for the cost of her drug screen.

Plaintiff alleges that she "recalls the Examiner being both nervous and visibly shaken during the conversation - a sharp contrast to his earlier enthusiasm toward her application." Plaintiff

---

[1](...continued)
Rule 73.02(B)(2)(g), D.S.C. The Defendant filed a motion to dismiss Plaintiff's two state law causes of action. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

2



alleges that she continued to call the Defendant thereafter for several weeks inquiring about potential job openings to no avail, and that when she returned for her refund, the Examiner again "nervously apologized for not being able to hire Plaintiff." Plaintiff alleges that a short time later she was contacted by a male colleague who told her he had just been hired as a welder by the Defendant, and that this colleague did not have his welder's certification and had significantly less experience than the Plaintiff. Plaintiff alleges that she "later learned of [the Defendant's] reputation for not hiring women for construction related positions which were traditionally held by men." Plaintiff is currently employed as a welding contractor at the Northrop Grumman Naval Shipyard.

In her third cause of action (breach of contract/breach of contract with fraudulent intent), Plaintiff alleges that the "Defendant's agents/employee promised her the position and she accepted and relied upon oral assertions that she was hired. Furthermore, Defendant had Plaintiff fill out tax forms and a time slip, which Plaintiff reasonably understood to mean she was hired. Defendant willfully breached this oral employment contact."

In her fourth cause of action (negligent supervision), Plaintiff alleges that the "Defendant failed to properly supervise its employees who orally created and lead Plaintiff to believe an employment contract was created. The Defendant should have further investigated and inquired to discover the contract Plaintiff and Examiner agreed upon prior to refusing to hire Plaintiff."

**Discussion**

When considering a Rule 12 motion to dismiss, the Court is required to accept the allegations in the pleading as true, and draw all reasonable factual inferences in favor of the Plaintiff. The motion can be granted only if the Plaintiff has failed to set forth sufficient factual matters to state a plausible claim for relief "on its face". Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).



3

I.

In South Carolina, in order to maintain a claim for breach of contract with fraudulent intent, Plaintiff must first have alleged facts sufficient to show the existence of a contract and that she was not an employee at-will. Cf. Greene v. Quest Diagnostic Clinical Labs, Inc., 455 F.Supp.2d 483, 495 (D.S.C. 2006)[At-will employment will not serve to support a cause of action for breach of contract accompanied by a fraudulent act]; Ramsey v. Vanguard Services, Inc., No. 07-265, 2007 WL 904526 at * 2 (D.S.C. Mar. 22, 2007)["The cause of action for breach of contract accompanied by a fraudulent act cannot be recognized absent proof of an enforceable contract beyond employment-at-will."]. Further, an employee without a contract for a stated period of time is presumptively considered an employee at-will. Cape v. Greenville School District, 618 S.E.2d 881, 883 (S.C. 2005). Nothing in the allegations of the complaint is sufficient to set forth a plausible claim "on its face" of the existence of any contract of permanent employment, or that any contract that may have existed was anything other than at-will. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)[While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, factual allegations must be enough to raise a right to relief above the speculative level]; Johnson v. Bank of America, No. 09-1600, 2010 WL 1542560, at * 2 (D.S.C. April 16, 2010)["Mere legal conclusions [are] not entitled to a presumption of truth"]. "Without ever establishing the existence of a contract, Plaintiff cannot practically rely upon a claim for breach of such contract. For this reason alone, Plaintiff's cause of action for breach of contract accompanied by a fraudulent act must be dismissed." Ramsey, 2007 WL 904526 at * 6; Dodgens v. Kent Mfg. Co., 955 F.Supp. 560, 567 (D.S.C. 1997) [breach of contract accompanied by a fraudulent act requires proof of an underlying contract]; Floyd v. Country Squire Mobile Homes,



4

Inc., 336 S.E. 2d 502, 503 (S.C.Ct.App. 1985); Shelton v. Oscar Mayer Foods Corp., 459 S.E.2d 851 (S.C.Ct.App. 1995) [claims involving breach of contract accompanied by a fraudulent act require the existence of a contract beyond one at-will], aff'd, 481 S.E.2d 706 (S.C. 1997).

In her memorandum opposing the Defendant's motion, Plaintiff argues that an employer may breach a contract by terminating an employee in violation of public policy, whether an employment contract is at-will, term, or otherwise. However, the Defendant correctly points out that Plaintiff has not asserted a claim for violation of public policy in her Complaint, nor has Plaintiff moved to amend her Complaint to add such a claim. In any event, in South Carolina a "public policy" claim can only be maintained in the absence of a statutory remedy. Palmer v. House of Blues Myrtle Beach Rest. Corp., No. 05-3301, 2006 WL 2708278, at * 3 (D.S.C. Sept. 20, 2006)["When a statute creates a substantive right and provides a remedy for infringement of that right, the Plaintiff is limited to that statutory remedy"], citing Lawson v. South Carolina Department of Corrections, 532 S.E.2d 259 (S.C. 2000); Gleaton v. Monumental Life Ins. Co., ___ F.Supp.2d ___, 2010 WL 419921 at * 2 (D.S.C. Jan. 28, 2010); Heyward v. Monroe, No. 97-2430, 1998 WL 841494, at * 4 (4th Cir. Dec. 7, 1998)[Finding that Plaintiff's public policy termination claim was appropriately dismissed: "South Carolina permits an action under the public policy exception when an at-will employee is terminated for refusing to violate the law. It has not been extended to circumstances where there is a statutory remedy for employment discrimination, as in this case"]; Zeigler v. Guidant Corp., No. 07-3448, 2008 WL 2001943 at * 2 (D.S.C. May 6, 2008) ["The Ludwick exception to at-will employment is not designed to overlap an employee's statutory rights to challenge a discharge, but rather to provide a remedy for a clear violation of public policy where no other reasonable means of redress exists."] (quoting Stiles v. American General Life Ins. Co., 516



S.E.2d 449, 452 (S.C. 1999)); Dockins v. Ingles Markets, Inc., 413 S.E.2d 18, 19 (S.C. 1992); Epps v. Clarendon County, 405 S.E.2d 386, 387 (S.C. 1991).. Here, since Plaintiff's public policy wrongful discharge argument (assuming she had asserted such a claim in her Complaint) is based on her claim that she was discharged because of her race and/or gender in violation of Title VII, the allegations of Plaintiff's Complaint fail to support a common law public policy breach of contract claim.

## II.

With respect to Plaintiff's negligent supervision claim, Defendant further argues that, even if otherwise maintainable, Plaintiff's cause of action for negligent supervision is subject to dismissal because it is barred by the exclusivity provisions of the South Carolina Workers Compensation Act, the relevant portion of which provides:

> The rights and remedies granted by this Title to an employee when he and his employer have accepted the provisions of this Title, respectively, to pay and accept compensation on account of personal injury or death by accident, shall exclude all of the rights and remedies of such employee, . . . . as against his employer, at common law, or otherwise, on account of such injury, loss of service or death.

S.C. Code Ann. § 42-1-540.

South Carolina courts applying § 42-1-540 have specifically held that an employee's claims against an employer for injury based on negligent supervision are covered by the Workers' Compensation Act. See Dickert v. Metropolitan Life Ins. Co., 428 S.E.2d 700 (S.C. 1993)[holding that the Act provides the exclusive remedy for work-related injuries, and that claims for negligence, including hiring, retention, and supervision, as well as emotional distress are covered by the Act]; Palmer, No. 05-3301, 2006 WL 2708278, at * 3 (D.S.C. Sept. 20, 2006); Loges v. Mack Trucks, 417 S.E.2d 538 (S.C. 1992)[Dismissal of claim of negligent supervision under Workers Compensation



6

Act]; see also Powell v. Vulcan Materials Co., 384 S.E.2d 725 (S.C. 1989); Thompson v. J. A. Jones Const. Co., 19 S.E.2d 226 (S.C. 1942); Washington v. Hilton Hotels Corp., No. 07-2694, 2008 WL 747792, at * 4 (D.S.C. Mar. 17, 2008); Ray v. Bechtel Savannah River, Inc., No. 06-2946, 2007 WL 1960587 (D.S.C. Jul. 2, 2007)[Granting motion to dismiss]. This finding is the same even where, as here, the Defendant's conduct is alleged to have been wanton, willful and reckless. Washington, 2008 WL 747792, at * 7; Palmer, 2006 WL 2708278, at * 3.

While Plaintiff is correct that a claim is not barred by the exclusivity provision of the Workers' Compensation Act where allegedly intentional conduct was committed by the employer through an "alter ego" of the employer itself, there is no allegation in the Complaint that the "Examiner" in this case, even assuming he or she could be deemed to have engaged in "intentional" conduct under the Act, was an alter ego of the Defendant. See Dickert, 428 S.E.2d at 701 [Defining "alter ego" as "dominate corporate owners and officers", and not to include "supervisory employees"]; Washington, 2008 WL 747792, at * 5; Palmer, 2006 WL 2708278, at * 4. Plaintiff argues in her brief that the Examiner could have been instructed by the Defendant's CEO or a similar "alter ego" of the Defendant to reverse the decision to hire her; however, such a theory is nowhere contained in Plaintiff's negligent supervision cause of action, which states in toto:

> The Defendant failed to properly supervise its employee who orally created and led Plaintiff to believe an employment contract was created. The Defendant should have further investigated and inquired to discover the contract Plaintiff and Examiner agreed upon prior to refusing to hire Plaintiff.

See Complaint, ¶ 36.

Nor do the factual allegations of the Complaint contain any facts to show or give rise to a plausible claim that a CEO, or indeed anyone else, ordered the Examiner not to hire the Plaintiff.

7



Rather, Plaintiff merely alleges that prior to the Examiner meeting with the Plaintiff and telling her that they were not going to be able to hire her because they had not gotten a contract which they were apparently anticipating receiving, an unknown male employee had said hello to the Plaintiff before returning to another office.

Hence, there are no factual allegations in the Complaint sufficient to state a plausible claim that wrongful intentional conduct was committed by an "alter ego" of the employer sufficient to avoid dismissal. Twombly, 550 U.S. at 555 [Factual allegations must be enough to raise a right to relief above a speculative level]; Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995)["Complaint must contain facts which state a claim as a matter of law and must not be conclusory"]; see also Ashcroft v. Iqbal, 129 S.Ct. at 1949 ["Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."][2]. Therefore, this claim is also subject to dismissal.

## Conclusion

Based on the foregoing, it is recommended that the Defendant's motion to dismiss be **granted**, and that Plaintiff's state law claims as set forth in her third and fourth causes of action be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____

November 10, 2010  Bristow Marchant
Charleston, South Carolina  United States Magistrate Judge

---

[2]If, during the course of discovery, Plaintiff obtains evidence to support such an alter ego theory, she could move to amend her complaint at that time.



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).



9