IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| JAMESINA CRAWFORD, ) | CIVIL ACTION NO.: 2:10-2094-CWH-BM |
| Plaintiff, ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| LIMEHOUSE & SONS INC., ) | |
| Defendant. ) | |

This action has been filed by the Plaintiff alleging claims for race and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq.[1] The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on December 12, 2011.[2] Plaintiff filed a memorandum in opposition to the Defendant's motion on January 3, 2012, and a hearing was held before the undersigned on April 6, 2012, at which both parties were represented by able counsel. The Defendant's motion for summary judgment is now before the Court for disposition.[3]

---

[1]Plaintiff's Complaint originally also asserted two state law causes of action, which were dismissed by the Court in an Order filed December 10, 2010. See Court Docket No. 12. See also Court Docket No. 10.

[2]By the time of the filing of the motion for summary judgment, Plaintiff's counsel had advised counsel for the Defendant that Plaintiff was dropping her Title VII claim for race discrimination. See Memorandum in Support of summary judgment, p. 1, n.1. Therefore, the only claim remaining in this lawsuit, and the only claim addressed in the motion for summary judgment, is Plaintiff's claim for gender discrimination.

[3]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local
(continued...)

1



## Background and Evidence[4]

The Defendant is a family owned business that performs industrial fabrication and maintenance for local businesses. Most of the Defendant's approximately fifty (50) employees are welders. Timothy Limehouse Deposition, pp. 18-19. The main types of welding are shop welding, which is carried out at the Defendant's office located in Ladson, South Carolina; and fieldwork, which is performed on site where needed by clients. Timothy Limehouse Deposition, pp. 6-12, 18-19. Plaintiff has degrees in Welding I, Welding II, Welding III, Blueprint Reading 1, and Blueprint Reading 2, and has worked as a welder for several different companies. Plaintiff's Deposition, pp. 8, 10-28; and Exhibit One. Plaintiff testified that she is experienced in virtually all kinds of welding, including Stick welding, MIG welding, TIG welding, Flux-Core welding, and in all positions, including overhead, flat and vertical. Plaintiff's Deposition, p. 29.

Plaintiff's first name is Jamesina, but she goes by the name "Jamie". Plaintiff's Deposition, p. 7; Nicholson Deposition, p. 30. In early 2008, Plaintiff read an advertisement in the local newspaper indicating that the Defendant was looking to hire experienced welders. The Defendant also had a sign in front of the company building indicating that it was looking to hire experienced welders. Timothy Limehouse Deposition, p. 12; Plaintiff's Deposition, pp. 56-57.

---

[3](...continued)
Rule 73.02(B)(2)(g), D.S.C. The Defendant has filed a motion for summary judgement. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[4]The facts and evidence are considered and discussed in this Report and Recommendation in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).



Timothy Limehouse, who is one of the people in charge of hiring for the Defendant,[5] testified that he had been informed by Knight Industry (a customer) that it was about to begin a project that would require welders from the Defendant, and that the Defendant needed additional welders for this anticipated increased workload. Timothy Limehouse Deposition, pp. 12-13, 44. On February 27, 2008, Plaintiff went to the Defendant's office to apply for a welder position, and was given an application to fill out by the receptionist. Plaintiff's Deposition, pp. 58-59. See also Plaintiff's Exhibit 1 [Job Application].

After submitting her application, Plaintiff was told she would need to return the following day to take a welding test. The welding test was administered by Britt Limehouse, a Limehouse cousin who worked as a foreman for the Defendant, following which Britt Limehouse shook Plaintiff's hand and welcomed her to Limehouse & Sons. Plaintiff's Deposition, pp. 63-70; Timothy Limehouse Deposition, p. 16. Britt Limehouse instructed the receptionist to provide Plaintiff with some additional paperwork to complete, and she was advised that she would also need to take a drug test. Plaintiff's Deposition, pp. 70-71; Timothy Limehouse Deposition, p. 21; see also Plaintiff's Exhibit 1. Plaintiff took the drug test the following day, which she passed. Plaintiff's Deposition, pp. 70-71. Plaintiff provided the drug test results to the Defendant that same day, following which she completed some additional employment forms. See Plaintiff's Exhibits 4 and 5.

Plaintiff testified that at that point "a tall gentlemen came out and looked at me. He spoke, I spoke back, and he went back." Plaintiff's Deposition, p. 72. Plaintiff testified that

---

[5]Timothy Limehouse testified that he, James Limehouse and Lawton Limehouse were the company officials with the authority to hire and fire. Timothy Limehouse Deposition, p. 17.



Timothy Limehouse then came out[6] and told her that the expected additional work the company thought it was going to receive was not going to materialize, and that they would be unable to hire her. Timothy Limehouse Deposition, pp. 11-12, 44; Plaintiff's Deposition, pp. 72, 78. This was the first time Timothy Limehouse had actually seen the Plaintiff. Timothy Limehouse Deposition, p. 11. Timothy Limehouse testified that on the morning Plaintiff brought the drug test results to the Defendant's offices, he had received word from Knight Industry that their expected project was now on hold. Timothy Limehouse Deposition, p. 44.

Plaintiff testified that after this occurrence, she called the Defendant back on several occasions to see if they had any job openings, but that she never received another job offer from the Defendant, even though the evidence shows that the Defendant hired a number of additional welders after the date Plaintiff was not hired. Plaintiff's Deposition, p. 84; see Plaintiff's Exhibit 6. All of these additional hires were male. James Limehouse Deposition, p. 18; Timothy Limehouse Deposition, pp. 18, 20, 25, 27-28. Timothy Limehouse testified that he did not know why Plaintiff was never called back. Timothy Limehouse Deposition, pp. 31, 45. Timothy Limehouse also testified that the Defendant has never hired a female welder. Timothy Limehouse Deposition, p. 29. See also Plaintiff's Exhibit 6 [Employee List].

Plaintiff submitted an Equal Employment Opportunity Commission (EEOC) Intake Questionnaire to the EEOC on or about September 10, 2008, in which Plaintiff asserted

---

[6]In Plaintiff's deposition, she was initially unsure of who it was that came back out to talk to her, originally stating it was either Britt Limehouse or Jimmy Limehouse (the Defendant's President). Plaintiff's Deposition, p. 72. It is also not clear from Plaintiff's deposition testimony who the "tall man" was who had initially come out and spoken to her. Id. However, there is apparently at this point no dispute among the parties that it was Timothy Limehouse who came out and spoke to the Plaintiff the second time.



that the Defendant did not hire her because she is female. Defendant's Exhibit 1. Thereafter, Plaintiff filed a formal charge of discrimination with the EEOC on or about July 21, 2009, again asserting that she had been discriminated against by the Defendant, inter alia, on the basis of her gender. Defendant's Exhibit 2. After receiving a Right To Sue letter, Plaintiff filed this action in United States District Court.

## Discussion

The Defendant has moved for summary judgment on Plaintiff's gender discrimination claim. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992).

## I.

### (Timeliness of Charge)

Defendant initially argues that Plaintiff failed to timely file her administrative charge of discrimination with the EEOC, and that it is therefore entitled to summary judgment on this basis. The parties do not dispute that the date when Plaintiff was not hired (and/or told



she no longer had a job) was on or about March 4, 2008.[7]  As noted hereinabove, Plaintiff did not file her intake form with the EEOC until September 10, 2008, and did not file her formal administrative charge of discrimination until July 21, 2009.

In order to bring a lawsuit in United States District Court under Title VII, a plaintiff is first required to properly exhaust his or her administrative remedies.  Specifically, Title VII requires that a claimant file a charge of discrimination with the EEOC within one hundred and eighty (180) days of the alleged discriminatory act or acts, or, if the alleged discrimination occurred in a "deferral state", within three hundred (300) days from the alleged discriminatory act or acts if the claimant initially institutes proceedings with the appropriate state agency, or within thirty (30) days of the state agency's termination of its proceedings, whichever is earlier.  See 42 U.S.C. § 2000e-5(e).

South Carolina is a deferral state, with the appropriate state agency being the South Carolina Human Affairs Commission (SCHAC).  Defendant argues, however, that Plaintiff filed her intake form only with the EEOC, and that since this form was not filed until one hundred ninety (190) days after March 4, 2008, even if it is sufficient to constitute her administrative charge, Plaintiff did not meet the one hundred eighty (180) day deadline for filing

---

[7]Plaintiff's application, application supplement, authorization form for drug and alcohol testing, and release form of employment records are all dated February 27, 2008.  See Timothy Limehouse Deposition, Exhibits 2-5.  Plaintiff's drug test service date was February 29, 2008.  See Timothy Limehouse Deposition, Exhibit 8.  The forms with Plaintiff's signature include a W-4, the Defendant's cell phone policy, Defendant's two-way radio policy, the employment eligibility verification, paid holiday policy, payroll direct deposit form, memorandum on safety and training classes and drug screen policy, mandatory safety policy, and post offer-of-employment medical inquiry, and are all dated February 29, 2008.  See Timothy Limehouse Deposition, Exhibits 10-20.  February 29, 2008 was a Friday.  The parties appear to agree the Plaintiff came back the following Monday, March 3, 2008, or Tuesday, March 4, 2008.  See Plaintiff's Deposition, pp. 104-105.



with the EEOC. The undersigned does not find that the Defendant is entitled to summary judgment based on this argument.

First, although an intake questionnaire is not a formal charge of discrimination, it can be deemed a charge if it can be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee". Federal Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008)[Noting that such a filing should be examined from the standpoint of an objective observer as to whether the filer is requesting the Agency to activate its machinery and remedial processes]. Here, the portions of the questionnaire provided to the Court contain a lengthy hand-written complaint by the Plaintiff against the Defendant, but Plaintiff does not specifically request any action in this writing. See Defendant's Exhibit 1. However, it does not appear that the entire intake form has been provided to the Court for review; rather, only certain pages relating to this Defendant have been enclosed,[8] so it is unclear whether Plaintiff may have requested some particular action in another part of the Questionnaire. See Defendant's Exhibit 1.

In any event, it has also been noted that EEOC Intake Questionnaires contain boilerplate language stating that when the questionnaire "constitutes the only timely written statement of allegations of employment discrimination, the Commission will . . . consider it to be

---

[8]Plaintiff referenced two companies in her Intake Questionnaire, the Defendant and Fluor Daniels Construction Company. The exhibit provided to the Court contains the first two pages of the Intake Questionnaire, together with a lengthy handwritten attachment to the questionnaire wherein Plaintiff states her grievance against the Defendant Limehouse & Sons. The remaining parts of the Intake Questionnaire are not provided.



a sufficient charge of discrimination under the relevant statute(s)"; Adams v. U.S. Airways, Inc., No. 10-1658, 2011 WL 1326054, at * 4 (D.S.C. Mar. 16, 2011), adopted on other grounds, 2011 WL 1261451 (D.S.C. Apr. 5, 2011); and after review of the limited exhibit provided to the Court in conjunction with the applicable case law, the undersigned finds that there is at least an issue of material fact as to whether Plaintiff's Intake Questionnaire was sufficient to constitute her administrative charge to survive summary judgment. It is noted that Plaintiff's later formal charge of discrimination states that, "**THIS PERFECTS THE CORRESPONDENCE ORIGINALLY RECEIVED BY THE COMMISSION ON SEPTEMBER 10, 2008**." See Defendant's Exhibit 2 [emphasis and bold in original]. Further, while the handwritten statement Plaintiff attached to her intake questionnaire does not contain a formal request for the EEOC to take action, it does contain a somewhat detailed recitation of what Plaintiff claims happened to her and that Plaintiff had been told that the Defendant does not hire women. As was the case Adams, "the Plaintiff's submission does not speak in the language of mere information gathering or providing. And, as emphasized, the EEOC has expressed an intent . . . to treat the questionnaire as a Charge where it represents the only timely filing . . . ." Adams v. U. S. Airways, Inc., 2011 WL 1326054, at * 5.

Finally, even though the Defendant correctly notes that the intake questionnaire was not filed until one hundred ninety (190) days after March 4, 2008, there is no question that the EEOC referred this matter to SCHAC for disposition; see Plaintiff's Exhibit 7; and the Questionnaire was filed well within the three hundred (300) day deferral period. The undersigned agrees with Plaintiff that the referral by the EEOC to the state agency satisfied § 2000e-5(e)(1)'s requirement that the aggrieved person must have instituted proceedings with the

8



state deferral agency in order to qualify for the three hundred (300) day limitations period. See Tinsley v. First Union National Bank, 155 F.3d 435, 439 (4th Cir. 1998); EEOC v. Commercial Office Prods. Co., 486 U.S. 107, 111, 122-125 (1988). Plaintiff should not be prejudiced by the fact that the EEOC did not send the file to SCHAC until after the formal charge was submitted.

Additionally, and as an alternative theory for timeliness of her charge, Plaintiff contends that when the Defendant subsequently refused to hire her even while continuing to hire male welders, each failure to hire constituted a new, separate, discrete act of failure to hire, which would bring her formal administrative charge within the applicable 300 day filing period even if only the July 2009 formal charge of discrimination is considered. Cf. Poindexter v. Northrop Corporation, 728 F.Supp. 1362, 1367-1368 (N.D. Ill. 1990). Considered in the light most favorable to the Plaintiff, the evidence reflects that when Plaintiff was told by Timothy Limehouse that the Defendant did not get the expected work from Knight Industry, he indicated that work could still be coming and Plaintiff assumed that she would be called. Plaintiff's Deposition, pp. 99, 102. Plaintiff's formal charge of discrimination was filed on July 21, 2009. Defendant's Exhibit 2. Three hundred days prior to that date would be September 24, 2008. The record shows that Plaintiff moved to Virginia to work at the end of December 2008 or early 2009; see Plaintiff's Deposition, pp. 40-41; but that prior to that time, Plaintiff had called several times to inquire about openings. See Plaintiff's Deposition, p. 84. However, the Defendant never called Plaintiff back even while hiring approximately twenty-one other welders between March 13, 2008 and November 11, 2008 (including seven between October 20, 2008 and



November 11, 2008), - any one of which would make Plaintiff's claim timely even using the date of July 21, 2009, when she filed her formal charge of discrimination. See Plaintiff's Exhibit 6.

Therefore, the Defendant is not entitled to dismissal of Plaintiff's case on the ground that she did not timely file an administrative charge of discrimination. Cf. Young v. Will County Dept. of Public Aid, 882 F.2d 290, 292 (7th Cir. 1989)["All doubts of jurisdictional timeliness are to be resolved in favor of trial"].

## II.

### (Disparate Treatment Claim)

Plaintiff's Title VII discrimination claim is for disparate treatment, based on her assertion that she was subjected to gender discrimination when the Defendant failed to hire[9] her for a welder position in February/March 2008. Plaintiff's claim requires proof of intentional discrimination, either by direct evidence or by the structured procedures set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Plaintiff has not offered any direct evidence of gender discrimination,[10] and Defendant argues that Plaintiff has failed to present sufficient

---

[9]An alternative argument advanced by the Plaintiff is that her claim should be considered a "termination" claim under Title VII on the theory that she had in fact already been hired by Britt Limehouse, and that Timothy Limehouse's subsequent conduct constituted a termination from employment after she had already been hired, even though she had yet to perform any work. However, while some of the documents provided would seem to indicate Plaintiff had actually been hired, Plaintiff has presented no evidence to show that Britt Limehouse had the authority to hire her for a position, and under the facts and evidence presented, the undersigned has concluded that Plaintiff's claim is more appropriately considered under a "failure to hire" proof scheme.

[10]Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact without any inferences or presumptions. O'Connor v. Consolidated Coin Caterers Corp.,
(continued...)



circumstantial evidence to create a genuine issue of fact as to whether the conduct alleged occurred because of her gender under the McDonnell Douglas proof scheme[11] to survive summary judgment.

The United States Supreme Court articulated a three-part formula for analyzing discrimination cases in McDonnell Douglas. First, Plaintiff must establish a prima facie case of discrimination. If a prima facie case is established, a rebuttable presumption is created that the Defendant unlawfully discriminated against her. Second, once this presumption has been established, the burden of production shifts to the Defendant to show a legitimate, non-discriminatory reason for its actions. Third, if the Defendant shows a legitimate, non-discriminatory reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the Defendant's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of the Defendant were really based on Plaintiff's gender. McDonnell Douglas Corp., 411 U.S. at 802-805; Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-256 (1981); Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231,

---

[10](...continued)
56 F.3d 542, 548-549 (4th Cir. 1995), rev'd on other grounds, 517 U.S. 308 (1996); Black's Law Dictionary, 460 (6th Ed. 1990) (citing State v. McClure, 504 S.W.2d 664, 668 (Mo.Ct.App. 1974); see Williams v. General Motors Corp, 656 F.2d 120, 130 (5th Cir. 1981), cert. denied, 455 U.S. 943 (1982).

[11] Since neither party has argued for consideration of Plaintiff's claim under a "mixed-motive" analysis, the undersigned has only evaluated Plaintiff's claim using the McDonnell Douglas analysis. See Hopes v. Roche, No. 04-2963, 2005 WL 1812820 at * 6 n. 2 (D.Md. Aug. 2, 2005) (citing Nagy v. Baltimore Life Ins. Co., 49 F.Supp.2d 822, 836 n. 13 (D.Md. 1999) [declining to engage in "mixed-motive" analysis where parties have not argued a mixed-motive theory.]).



234-235 (4th Cir. 1991). Despite these shifting burdens of production, however, Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout. Texas Dep't of Community Affairs, 450 U.S. at 252-253; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

**Prima facie case**. In order for Plaintiff to establish her prima facie case of discrimination, the evidence must be sufficient to show that (1) Plaintiff is a member of a protected class; (2) she applied for and was qualified for a job for which the employer was seeking applicants; (3) despite her qualifications, she was rejected; and (4) after her rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. McDonnell Douglas, 411 U.S. at 802. The Defendant does not dispute that Plaintiff is a member of a protected class [female], that she applied for a welder position with the Defendant, and that (at least for purposes of summary judgment) Plaintiff was qualified for the position applied for. However, the Defendant disputes that, after Plaintiff was not hired for the position, the position remained open for other applicants or was filled by anyone else. The undersigned does not agree.

Considered in the light most favorable to the Plaintiff, the evidence shows that, although Plaintiff was told there was no longer a position open and available, her application remained on file with the Defendant and she called on several occasions to confirm whether the Defendant was hiring welders. Plaintiff's Deposition, p. 84; see Timothy Limehouse Affidavit. Plaintiff never received a call back or a job offer, even though the Defendant hired five (5)



welders within thirty (30) days of Plaintiff's rejection for the position, all of whom were male.[12] In fact, the Defendant hired twenty-one (21) welders between the date Plaintiff was rejected for the position and the end of 2008. Again, all of these new hires were males. Id. Although the Defendant initially argued in its brief that the only individuals hired for welder positions within the year following Plaintiff's rejection were former employees who had been laid off and were being rehired; see Defendant's Brief, p. 6; Timothy Limehouse only labeled one of these individuals as a rehire in his affidavit when addressing the five individuals hired within thirty (30) days of Plaintiff being told that there was no work, and he testified that he had no explanation for why Plaintiff was not called back for a hire. See Timothy Limehouse Affidavit; Timothy Limehouse Deposition, pp. 31, 45.[13]

       This evidence, considered in the light most favorable to the Plaintiff, is sufficient to establish the fourth and final prong of Plaintiff's prima facie case.

---

[12]Defendant hired three of the above mentioned individuals within 10 days of the incident involving the Plaintiff. See Plaintiff's Exhibit 6.

[13]Timothy Limehouse attests in his affidavit that he did not believe Plaintiff was qualified for the welder positions filled shortly after Plaintiff was not hired. However, that was not his deposition testimony, and the Court is not required to accept contradictory statements in his subsequent affidavit that are in contravention of that testimony. Bickerstaff v. Vassar College, 196 F.3d 435, 455 (2d Cir. 1999) ["It is beyond cavil that a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that...contradicts the affiant's previous deposition testimony."] (internal quotations and citations omitted); Kennedy v. Allied Mutual Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991) [party cannot create issue of fact by contradicting prior deposition testimony].



**Legitimate, non-discriminatory reason**. With respect as to whether the Defendant has met its burden of producing a legitimate, non-discriminatory reason for its actions, the Defendant has submitted evidence to show that, after Plaintiff had applied for a welder position, the Defendant learned that an expected increase in business from a client was not going to materialize, and that it therefore did not need to hire an additional welder at that time. Timothy Limehouse Deposition, pp. 11-12, 44. Plaintiff has provided no evidence to dispute that this loss of anticipated business did not in fact occur.

This evidence is sufficient to establish a legitimate, non-discriminatory reason for the Defendant's decision not to hire Plaintiff when she first applied for a welder position. See EEOC v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1991) [The Defendant's burden of establishing a legitimate, non-discriminatory reason is only one of production, not of persuasion]; Texas Dep't of Community Affairs, 450 U.S. at 256 [the burden of establishing a prima facie case is not onerous]. Therefore, Plaintiff must present evidence of pretext in the making of the decision not to hire her in order to avoid summary judgment on her claim.

**Pretext**. In order to show pretext, Plaintiff must show that "but for" the Defendant's intent to discriminate against her because of she is a female, she would have been hired for a welder position. EEOC, 955 F.2d at 941; Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 234 (4th Cir. 1991). "Direct or indirect evidence of discriminatory motive may do, but 'the evidence as a whole... must be sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by [discriminatory animus].'" LeBlanc v. Great American



Ins. Co, 6 F.3d 836, 843 (1st Cir. 1993)(citing Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1117 (1st Cir. 1993)(quoting Connell v. Bank of Boston, 924 F.2d 1169, 1172, n. 3 (1st Cir. 1991); Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141-143 (2000). After careful review and consideration of the evidence and arguments presented in the light most favorable to the Plaintiff, the undersigned finds and concludes that sufficient evidence of pretext exists to avoid summary judgment on this claim.

Considered in the light most favorable to the Plaintiff, the evidence shows that the Defendant had advertised for a welder position, that Plaintiff applied for that position, and that she was qualified for the position.[14] The evidence further shows that Plaintiff was interviewed by Britt Limehouse, that she passed her welding test as well as her drug test, and there was every indication from Britt Limehouse that she was going to get the job. Plaintiff's Deposition, pp. 63-71; see Plaintiff's Exhibits 1, 4, 5; see also Timothy Limehouse Deposition, pp. 16, 21. However, when Plaintiff was subsequently seen in the office by Timothy Limehouse as well as

---

[14]While at the hearing there was some discussion about different types of welding and whether other welders who were hired after Plaintiff may have been hired for different types of welding than Plaintiff had applied for, Timothy Limehouse made no distinction in his deposition testimony about different types of welding and/or welders with respect to the Plaintiff, nor did he testify that Plaintiff was not qualified for any particular type of welding. See generally, Timothy Limehouse Deposition. In fact, Timothy Limehouse testified that Plaintiff performed well on her welding test, and based on what the Plaintiff was apparently going to get paid, the Defendant appeared to be pleased with Plaintiff's abilities based on her test. See Timothy Limehouse Deposition, pp. 18, 20; Plaintiff's Deposition, p. 67. Furthermore, Plaintiff has presented evidence to show that she is qualified to perform a wide range of welding jobs; Plaintiff's Deposition, pp. 8, 10-29; and the Defendant has not disputed any of this evidence.



another company official (the unidentified tall white man), revealing the obvious fact that she is a female, Plaintiff was told by Timothy Limehouse that the Defendant was no longer looking for welders and that she would not be hired for a position. Plaintiff's Deposition, pp. 72, 78; Timothy Limehouse Deposition, pp. 11-12. Notwithstanding this representation, however, the evidence reflects that the Defendant continued to hire welders after Plaintiff was not hired for a welder position, all of whom were male. See Plaintiff's Exhibit 6. Timothy Limehouse also conceded at his deposition that the Defendant had never hired a female welder either before Plaintiff had applied for a position, or since. Timothy Limehouse Deposition, p. 29; see Plaintiff's Exhibit 6.[15]

        Considered in the light most favorable to the Plaintiff, this evidence is sufficient to show pretext and to create a genuine issue of fact as to a discriminatory animus in the Defendant's decision not to hire the Plaintiff. Cf. Reeves, 530 U.S. at 140-143 [setting forth the general proposition that where a plaintiff presents sufficient evidence to raise an inference that the employer's asserted justification for the employment decision is false, a trier of fact can conclude that the employer unlawfully discriminated.]. While the Defendant has provided evidence to dispute this claim, considering the evidence in the light most favorable to the

---

[15]Defendant contends, and the undersigned does not dispute, that welding is an overwhelmingly male profession. However, while Timothy Limehouse indicated during his deposition that he did not know how many females had ever applied for a welding position with the Defendant, there have been some female applicants, and it is conceded that the Defendant has never hired a female welder. See Timothy Limehouse, p. 30.



Plaintiff, as this Court is required to do at summary judgment, the undersigned does not find that "[n]o reasonable trier of fact could conclude" that the Defendant failed to offer Plaintiff a position of employment as a welder because she is a female. Spratley v. Hampton City Fire Dept., 933 F.Supp. 535, 542 (E.D.Va. 1996), aff'd, 125 F.3d 848 (4th Cir. 1997); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)[At summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in her favor . . . . Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts," are all functions for the trier of fact]; Muhhammad v. Klotz, 36 F.Supp.2d 240, 243 (E.D. Pa. 1999); Reeves, 530 U.S. at 140-143. Therefore, the Defendant is not entitled to summary judgment on this claim.

## Conclusion

Based on the foregoing, Plaintiff's race discrimination claim should be **dismissed**. See note 2, supra. With respect to Plaintiff's remaining claim for gender discrimination, it is recommended that the Defendant's motion for summary judgment be **denied**.

The parties are referred to the Notice Page attached hereto.

June 22, 2012  
Charleston, South Carolina

Bristow Marchant  
United States Magistrate Judge



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

